**Lew SCHROEDER, Appellant,**

v.

**Nathan ZIEGELMAN, Respondent.**

**No. 24760.**

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

David A. Yarger, Woolsey & Yarger, Versailles, for respondent.

ALVIN C. RANDALL, Special Judge.

Plaintiff dug a canal at and near the water line of the Lake of the Ozarks. It was dug in the shallow water near the shore line and extended inland for some distance, thereby permitting the water to flow inland in the narrow excavation for a short distance. The purpose was to create a convenient place for plaintiff to dock his boat. The next day after the excavation was made defendant came with a bulldozer and filled the excavation. He stated to plaintiff that he would fill the canal as fast as plaintiff might open it. Plaintiff then secured a temporary injunction prohibiting defendant from interfering with plaintiff's reopening, maintaining and using the canal. Thereafter, and prior to the trial to determine whether or not there should be a permanent injunction, plaintiff reopened the canal and made improvements to facilitate its use.

On the trial plaintiff presented his evidence, at the close of which the court denied a permanent injunction, dissolved the temporary injunction, and dismissed plaintiff's action. Motion for new trial having been overruled, plaintiff appealed.

Plaintiff's evidence established, in addition to those facts previously recited, that the canal was made on land owned by a third party, Union Electric Company. Plaintiff owned some land in the general area, but did not prove its exact location. He got "permission" to build the canal from a Mr. Stafford. Plaintiff attempted to prove that Mr. Stafford owned the land that adjoined the Union Electric Company land where the canal was located, or that the canal was "in front of" Stafford's land. But the trial court found that the evidence offered was not legally sufficient to establish the location of Mr. Stafford's land. In any event, plaintiff concedes that the land where the canal was located is owned by Union Electric Company, and

William H. Bolinger, Bolinger & Bolinger, Versailles, for appellant.

that he did not get permission from said company to build and use the canal. No interest in defendant is shown. Union Electric Company is not a party to this action.

The trial court erred in dismissing plaintiff's action at the close of his evidence, because (1) plaintiff was in possession of the canal, and (2) could therefore maintain an action for trespass against defendant, a complete stranger so far as the evidence shows; and (3) under the evidence an action for trespass would be an inadequate remedy and a court of equity would grant an injunction.

Plaintiff had dug the canal, and the area he intended to use was as clearly delineated by the edges, or banks, of the canal as would have been an area on dry land enclosed by a fence. He had taken possession of, and occupied, the land insofar as this was possible in view of the fact that it was under water. It is true that at the time of defendant's trespass and threats of further trespasses, plaintiff had not built a dock. This is undoubtedly because defendant did not allow him enough time to do so. The digging of the canal itself is an improvement of the land, and gave notice to all, including defendant, that plaintiff was exercising dominion over the land. Defendant points out that there was "no activity" by plaintiff from the time defendant closed the canal until a temporary injunction was obtained, ten days later. It should be clear that plaintiff was not required to oppose the force of a bulldozer in order to sustain the credibility of his possession and dominion at the time of the trespass.

■ The law has long been settled in Missouri that, as against a mere tort-feasor, actual possession of land is alone sufficient to maintain trespass, although such possession is altogether unsupported by evidence of title, and even though it affirmatively appears that plaintiff is without title. Bell v. Union Electric Company of Missouri, Mo.App., 367 S.W.2d 812, 819,

and cases cited. The gist of an action for trespass is violation of possession, not challenge to title. Title can enter the picture only when it is relied on by one of the parties to establish "constructive" possession. Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 789–790. "By what rule of law, or equity, or sound policy, can a mere stranger be allowed to interfere and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?" Reed v. Price, 30 Mo. 442, 447.

■ Injunction is the proper remedy to prevent harassing, continuing and annoying trespasses, in which case a multiplicity of suits, if the only remedy, would be inadequate. Metropolitan Land Co. v. Manning, 98 Mo.App. 248, 71 S.W. 696, 698.

But respondent contends that, under the evidence in this case, a court of equity will stay its own hand, and will refuse to exercise its injunctive power because of the "clean hands" equitable maxim, or its corollary, "in pari delicto", which respondent refers to as "mutual fault." Although there are some distinctions between the maxim and its corollary, those distinctions are not material here, and respondent does not attempt to support in this case the application of each, independent of the other. In the conclusion to his brief respondent says that the "only basic question" on appeal is whether the application of the clean hands maxim will prevent a court of equity from giving injunctive relief. Simply stated, respondent's proposition is that plaintiff is asking relief from defendant's trespass when plaintiff himself is also a trespasser. Therefore, no clean hands.

■■ But the rule of law with which we are here concerned gives a plaintiff, being in possession of land, a right of action against a trespasser, even if the plaintiff secured his possession originally without the consent of the title owner. There is no evidence that plaintiff was guilty of

any acts which would make it unconscionable for him to request, or for the court to grant, the enforcement of his rights against defendant. The possibility that such a plaintiff may have at some time violated the rights of the title owner is contemplated by the rule of law itself, and such conduct is, in effect, forgiven—so long as plaintiff is contending, not with the title owner, but with a subsequent tort-feasor who interferes with plaintiff's possession. If this were not true, the rule of law would not exist. Defendant is actually asking us to strike down the rule of law on the ground that it is unconscionable. No principle or maxim of equity authorizes or permits such a ruling. Equity follows the law. It cannot create, unsettle or take away the rights of the parties, but is limited to determining what rights the parties have, and whether or in what manner it is just and proper to enforce them. Aetna Insurance Co. v. O'Malley, 342 Mo. 800, 118 S.W.2d 3, 10; Milgram v. Jiffy Equipment Co., 362 Mo. 1194, 247 S.W.2d 668, 676–677, 30 A.L.R.2d 925; Fleming-Gilchrist Constr. Co. v. McGonigle, 338 Mo. 56, 89 S.W.2d 15, 18, 107 A.L.R. 1003.

In entering its judgment, the trial court relied on Barnhart v. Ripka, Mo.App., 297 S.W.2d 787. In that case plaintiff did not rely on actual possession, but claimed constructive possession by reason of its alleged title to the land. But it was held that plaintiff's proof was not legally sufficient to establish its title. The case is not helpful.

The judgment of the trial court is set aside and the cause is remanded for a new trial.

HOWARD, P. J., and CROSS, J., concur.

SHANGLER, J., not participating because not a member of the court when the case was submitted.