353 So.2d 341 (1977)
Robert CRITNEY
v.
GOODYEAR TIRE & RUBBER COMPANY.
No. 11596.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
Rehearing Denied December 28, 1977.
*342 William A. Norfolk of Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellant.
Patrick W. Pendley of Freeman & Pendley, Ltd., Plaquemine, for plaintiff-appellee.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
BLANCHE, Judge.
Goodyear Tire & Rubber Company, defendant-appellant, is appealing a judgment awarding Robert Critney, plaintiff-appellee, $1,500.00 in damages and permanently enjoining the company, its officers, agents and employees from causing or permitting any polyvinyl chloride or other substance to escape onto plaintiff's property. In his brief to this Court, plaintiff has requested that the award of damages be increased to not less than $7,500.00.
In his petition to the trial court, plaintiff asked for $50,000 in damages and an injunction to enjoin the operation of the plant and to remove the plant. Plaintiff's residence is separated from the Goodyear property by a ditch. He testified that between February, 1976, and March, 1977, polyvinyl chloride powder fell on his property causing damage to the property which had been his home for over thirteen years.
In addition to plaintiff's testimony and photographic exhibits showing a powdery substance on his property, Mrs. Critney and three neighbors testified that polyvinyl chloride particulate matter from the Goodyear plant fell on the Goodyear neighboring property with irregular but numerous frequency, at some times covering portions of the ground to a depth of an inch to an inch and a half and permeating the air similar to a thick fog to a density that oncoming automobiles could not be seen on the highway and that "it just comes all in the house, it gets over everything, all in the cars, inside the house, in the bed if the window is up." The evidence indicates that the events had been recurring for years with an increasing frequency during the year and a half preceding trial and reached the point that one neighbor across the street from plaintiff cleaned his residence porch daily to remove the "white fine stuff" by hosing and sweeping.
The defendant offered the testimony of its plant manager and personnel manager, who testified that their automobiles parked at the plant had suffered de minimis damage from the polyvinyl chloride powder. Evidently, the trial judge gave more weight to the testimony of witnesses who were residents or nearby residents of the affected property than he did to defendant's employees who derive their livelihood from the defendant and keep their automobiles at this plantsite during their working hours.
Goodyear, as defendant-appellant, assigned three errors by the trial court:
(1) "failing to find that if an encroachment was being made by Goodyear onto the property of Critney, such was an `inconvenience' which, pursuant to RCC 668-669 was permitted (Article 668) or as to which it was damnum absque injuria."
(2) "granted an injunction which will prohibit defendant's lawful activities, absent a showing that such activities will cause irreparable injury."
(3) "awarding the sum of $1,500.00 in damages to plaintiff."
In considering the first error, we find helpful the words of Professor A. N. Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 204-206 (1974):
"Articles 667-69 form a unit in the Louisiana Civil Code of 1870, and, for a proper understanding, they must be read together. Article 667 prohibits works which cause damage or deprive neighbors of the enjoyment of their property; article 668 permits works that merely cause some inconvenience; and article 669 indicates that, in the absence of a conventional servitude, inconveniences resulting from the emission of smoke or odors may *343 be tolerated or suppressed, depending on police regulations and local customs. Admittedly, lines of demarcation are not clearly drawn among works that cause damage or deprive a neighbor of his enjoyment under article 667 and inconveniences that fall short of that test and must be tolerated under article 668. Further, no clear line of demarcation is drawn between inconveniences that must be tolerated under article 668 and those that may or may not be tolerated under article 669.
"Apparently, the redactors of the Civil Code wished to establish the following principles. No one may use his property so as to cause damage to another or to interfere substantially with the enjoyment of another's property (article 667). Landowners must necessarily be exposed to some inconveniences arising from the normal exercise of the right of ownership by a neighbor (article 668). But excessive inconveniences, such as those caused by the emission of industrial smoke or odors, need not be tolerated in the absence of a conventional servitude; whether an inconvenience is excessive or not is to be determined in the light of police regulations and local customs.
"According to civilian analysis, the right of ownership has an affirmative as well as a negative side. * * * The affirmative side is the owner's right to do with his property whatever he pleases; the negative side is the owner's right to exclude interferences with his property. These two sides of the right of ownership are implicit in articles 488 and 491 of the Louisiana Civil Code of 1870. * * * It is apparent that article 667 imposes a limitation on the affirmative side of the right of ownership in immovable property in favor of neighboring landowners. Although, in principle, a landowner may use and enjoy his property as he sees fit, he may not exercise his right in such a way as to cause damage to neighbors. Article 668 imposes a limitation on the negative side of a neighbor's right of ownership in immovable property. Although, in principle, the neighbor may exclude any interference with his property, he is bound to tolerate certain inconveniences resulting from the lawful use of another neighbor's property. By imposing limitations on the right of ownership the two articles maximize enjoyment of property in society. If a landowner had unlimited freedom in the use of his property, other landowners could not possibly have the same freedom. Limitations on the use of property thus ensure maximum enjoyment of property by all persons."
When we apply the unrefuted testimony of the witnesses as previously recited to LSA-C.C. arts. 668-669, we are compelled to agree that the trial judge was correct in concluding that the encroachment by Goodyear upon the property of plaintiff was, indeed, more than an "inconvenience" and could not possibly be dismissed as being merely damnum absque injuria.
As to the second assignment of error, we are convinced that the trial court was correct in ordering the injunction. Irreparable injury includes an injury, whether great or small, which ought not to be submitted to, and which, because it is so large or so small or is of such constant and frequent occurrence, cannot receive reasonable redress in a court of law. Clearly, to permit the continued encroachment on the property of plaintiff with polyvinyl chloride by Goodyear would be to permit irreparable injury which should not be tolerated. The injunction by the trial court is obviously designed to protect plaintiff in the future and is an appropriate remedy deeply embedded in our jurisprudence since the landmark case of McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21 (1944).
The third assignment of error objects to the $1,500.00 award, but we can find no error in this sum for past injury suffered by plaintiff as a neighboring landowner. Based on a careful review of the testimony, we can find no abuse of discretion in arriving at this quantum.
Additionally, regarding the quantum, this Court is precluded from considering an increase in the award to plaintiff, *344 inasmuch as plaintiff did not file an answer to appeal timely as provided in LSA-C.C.P. art. 2133.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
AFFIRMED.